PILLSBURY WINTHROP SHAW PITTMAN LLP
BLAINE I. GREEN  #193028
blaine.green@pillsburylaw.com
JEFFREY S. JACOBI  #252884
jeffrey.jacobi@pillsburylaw.com
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for Defendant
CHEVRON U.S.A., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPPI-SOMERSVILLE INC., SOMERSVILLE-GENTRY INC.,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>CHEVRON U.S.A., INC., as successor to Standard Oil of California, Inc.,<br><br>                    Defendant. | Case No. C 07-5824 SI<br>(related to Case No. C 04-2225 SI and Case No. C 04-2648 SI)<br><br>**DEFENDANT CHEVRON U.S.A., INC.'S OPPOSITION TO MOTION FOR CONSOLIDATION**<br><br>Judge:     Hon. Susan Illston<br>Location:  Courtroom 10, 19th Floor<br>Date:      April 25, 2008<br>Time:      9:00 a.m. |

TABLE OF CONTENTS

Page

I. INTRODUCTION. ...................................................................................................1

II. STATEMENT OF FACTS. .......................................................................................2

    A. The Plaintiffs and Their Property. ..............................................................2

    B. Different Defendants and Their Different Roles. .......................................2

    C. Different Landfills. .....................................................................................3

    D. Different Time Periods of Contamination. ................................................3

    E. Different Liability Theories. .......................................................................3

    F. Different Contamination and Damages. .....................................................4

III. PROCEDURAL HISTORY. .....................................................................................4

IV. LEGAL STANDARD FOR CONSOLIDATION. ...................................................6

V. THE TWO ACTIONS INVOLVE DIFFERENT DEFENDANTS, DIFFERENT LANDFILLS, DIFFERENT CONTAMINATION AND DIFFERENT THEORIES OF LIABILITY; INDIVIDUAL ISSUES PREDOMINATE AND, THUS, CONSOLIDATION SHOULD BE DENIED. ......................................................................................................................7

    A. Because individual issues predominate, consolidation should be denied. .........................................................................................................7

    B. CERCLA case law is directly on point and supports denial of consolidation ...............................................................................................8

VI. CONSOLIDATION SHOULD BE DENIED BECAUSE THE INTEREST IN JUDICIAL CONVENIENCE IS FAR OUTWEIGHED BY THE POTENTIAL FOR DELAY, CONFUSION AND PREJUDICE. .........................11

    A. Delay would be inevitable. .......................................................................11

    B. Confusion and prejudice to Chevron would be likely. .............................12

    C. The burden on Chevron would be substantial. .........................................13

VII. CONCLUSION. ......................................................................................................13

TABLE OF AUTHORITIES

Page

**Cases**

Close v. American Honda Motor, Inc.,
    1994 WL 761957, *3 (D. N.H. 1994)........................................................................... 8

Dusky v. Bellasaire Investments,
    2007 WL 4403985 (C.D. Cal. 2007) ......................................................................... 12

Geddes v. United Financial Group,
    59 F.2d 557 (9th Cir.1977) ........................................................................................ 12

Hasman v. G.D. Searle & Co.,
    106 F.R.D. 459 (E.D. Mich. 1985) ......................................................................... 6, 8

Johnson v. Manhattan Ry. Co.,
    289 U.S. 479 (1933) .................................................................................................. 12

Mayfield v. American Automobile Ins. Co.,
    2003 WL 21250935 (N.D. Tex. 2003) ....................................................................... 7

Mays v. Liberty Mutual Ins. Co.,
    35 F.R.D. 234 (E.D. Pa. 1964) ................................................................................ 8, 9

Mills v. Beech Aircraft Corp.,
    886 F.2d 758 (5th Cir. 1989 ..................................................................................... 11

Petromanagement Corp. v. Acme-Thomas Joint Venture,
    835 F.2d 1329 (10th Cir. 1988) ................................................................................ 11

Rendon v. City of Fresno,
    2006 WL 1582307, *4 (E.D. Cal. 2006) .............................................................. 6, 12

Schat v. Javits,
    53 F.R.D. 321 (S.D.N.Y. 1971) ................................................................................ 13

Servants of the Paraclete, Inc. v. Great American Insurance Co.,
    866 F.Supp. 1560 (D. N.M. 1994) ........................................................................ 6, 11

Solvent Chem. Co. v. E.I. DuPont de Nemours & Co.,
    242 F.Supp.2d 196 (W.D.N.Y. 2002) ................................................................ passim

Southwest Marine, Inc. v. Triple A Mach. Shop., Inc.,
    720 F.Supp. 805 (N.D. Cal. 1989) ........................................................................ 6, 11

Transeastern Shipping Corp. v. India Supply Mission,
    53 F.R.D. 204 (S.D.N.Y. 1971) ................................................................................ 12

United States v. Acton Corporation,
    131 F.R.D. 431 (D. N.J. 1990 ..................................................................................... 6

United States v. Yonkers Board of Education,
    518 F.Supp. 191 (S.D.N.Y. 1981) .............................................................................. 6

Walker v. H. Councill Trenholm State Technical College,
    2007 WL 1140423 ............................................................................................... 13

Zacky Farms v. FMC Corporation,
    2001 U.S. Dist. LEXIS 24255, *15 (E.D. Cal. 2001) ...................................... passim

**Statutes and Codes**

Comprehensive Environmental Response, Compensation, and Liability Act,
    42 U.S.C. section 9613(i) ....................................................................................... 6

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 24(a)(2) ........................................................................................................... 6

1  Chevron U.S.A., Inc. ("Chevron"), the sole defendant in Case No. C 07-5824 SI (the
2  "Chevron Action") submits the following opposition to Defendants' Joint Motion for an
3  Order To Consolidate Related Actions (Dkt. 142, "Motion" or "Mot."), filed by defendants
4  ("TRC Defendants") in Case No. C 04-2648 SI (the "TRC Action").

5  I.    **INTRODUCTION.**

6  Chevron opposes consolidation. Although the cases are related, the identity and role
7  of defendants, the theory of liability, and the nature of damages are all different. Here,
8  Chevron is the sole defendant; in the TRC Action, plaintiffs have sued 50 different
9  defendants. Here, Chevron is sued for allegedly allowing garbage to be placed on its
10 property; there, defendants are sued for their roles as landfill operators (current and former)
11 or generators of waste. Here, damages are premised on surface contamination from the Old
12 Antioch Landfill; there, damages are primarily from groundwater contamination apparently
13 leaching from the GBF and CCSL Landfills. That the actions involve the same property
14 and plaintiffs is not sufficient basis for consolidation. When cases have some common
15 facts, but individual issues predominate, consolidation should be denied.

16 Unlike the TRC Action, the Chevron Action does not involve groundwater
17 contamination. The only claim is for surface contamination arising from the City of
18 Antioch's deposit of garbage on the property of Standard Oil (Chevron's predecessor) in or
19 about 1957—and no later than 1966 when Standard Oil sold the property. The TRC
20 Action, on the other hand, involves toxic contamination of groundwater emanating from the
21 GBF and CCSL Landfills—allegedly for decades. A mere "distinction without a
22 difference," as TRC Defendants claim? Hardly. As alleged in the TRC Action, unlined
23 disposal ponds for liquid waste were constructed at the GBF Landfill; 80 million gallons of
24 liquid toxic waste were put in these ponds; the resulting contamination exceeded drinking
25 water standards, and jeopardized water-supply wells for nearby proposed residential
26 developments. None of these allegations are present in the Chevron Action.

27 Case law, moreover, supports Chevron's position. Conspicuously, TRC Defendants
28 fail to cite any CERCLA case in which consolidation was considered. Two cases are

directly on point.  In <u>Solvent Chemical Co. v. E.I. DuPont de Nemours & Co.</u>, 242 F. Supp. 2d 196, 222-23 (W.D.N.Y. 2002), the court denied consolidation of two CERCLA actions because, although the same property was at issue, the migration routes for contamination were separate.  Similarly, in <u>Zacky Farms v. FMC Corporation</u>, 2001 U.S. Dist. LEXIS 24255, *15 (E.D. Cal., Sept. 12, 2001), the court refused to consolidate two CERCLA actions because they involved different contaminants, different uses and different owners.  Here, as in <u>Solvent</u> and <u>Zacky Farms</u>, the contamination is different and, therefore, consolidation should be denied.

It is particularly appropriate to deny consolidation where, as here, the procedural differences between the two actions are significant, leading to a substantial risk of delay, confusion and prejudice in the event of consolidation.  The TRC Action was filed in June 2004, with discovery cut-off on May 1, 2008 and trial in November 2008.  The Chevron Action was filed just six months ago, discovery has yet to occur, and trial is set for October 2009.  The TRC Action would surely be delayed by consolidation and, due to the significant differences between the two cases, Chevron would be subject to jury confusion and prejudice.

For all of these reasons, consolidation should be denied.

II. **STATEMENT OF FACTS.**

A. **The Plaintiffs and Their Property.**

The plaintiffs in both actions are SPPI-Somersville Inc. and Somersville-Gentry Inc. (collectively, "Somersville Entities" or "Plaintiffs").  The Somersville Entities own four parcels of property adjacent or near to the Contra Costa Sanitary Landfill and the Old Antioch Landfill.  Third Am. Complaint in TRC Action ("TAC"), ¶ 1; First Am. Complaint in Chevron Action ("FAC"), ¶ 1.

B. **Different Defendants and Their Different Roles.**

<u>TRC Action</u>.  There are over 50 defendants named in the TRC Action, including the current owners and operators of the landfills, the former owners and operators of the landfills, and the generators of waste deposited in the landfills.  TAC, ¶¶ 11-60.

1         <u>Chevron Action</u>.  Chevron is the sole defendant in the Chevron Action.  FAC, ¶ 8.

2 Chevron is not sued for owning or operating a landfill, nor for generating or depositing

3 waste in a landfill.  FAC, ¶ 14.

4   C.    **Different Landfills.**

5         <u>TRC Action</u>.  This action involves contamination from four landfills:  the CCSL

6 Landfill (TAC, ¶¶ 65-77); the GBF Landfill (TAC, ¶¶ 78-81); the Pittsburg Landfill (TAC,

7 ¶¶ 82-84); and the Old Antioch Landfill (TAC, ¶¶ 92-100).

8         <u>Chevron Action</u>.  This action involves garbage only from the Old Antioch Landfill.

9 FAC, ¶¶ 13-21.

10   D.    **Different Time Periods of Contamination.**

11         <u>TRC Action</u>.  This action involves the disposal of hazardous materials in the 1960s

12 and 1970s, through approximately 1992. TAC, ¶ 1.

13         <u>Chevron Action</u>.  This action involves the alleged disposal of garbage on the

14 property of Chevron's predecessor, Standard Oil of California, in or about 1957 (when

15 Antioch was notified it could no longer burn waste) through 1958—and in any event no

16 later than 1966 (when Standard Oil sold the property to Tom Gentry California Company).

17 FAC, ¶¶ 9, 14.

18   E.    **Different Liability Theories.**

19         <u>TRC Action</u>.  The TRC Defendants are sued for owning or operating one of the

20 landfills, or for generating waste deposited in one of the landfills.  TAC, ¶¶ 11-60.

21         <u>Chevron Action</u>.  Chevron is not sued for owning or operating a landfill, nor for

22 generating or depositing waste in a landfill.  Instead, Chevron is sued for having been

23 "aware of th[e] accumulation of waste product and its distribution on Standard Oil of

24 California property."  FAC, ¶ 14.  In addition, plaintiffs have pled a "Non-disclosure" cause

25 of action against Chevron—a claim not present in the TRC Action—alleging that

26 Chevron's predecessor "failed to disclose the prior use of the Property as a dump site"

27 when it sold the property in 1966.  <u>Id.</u>, ¶ 70.

28

F.     **Different Contamination and Damages.**

<u>TRC Action</u>.  In the TRC Action, plaintiffs allege the CCSL Landfill (which consists of the GBF and Pittsburg Landfills) is the source of groundwater contamination on and under the Property.  TAC, ¶ 1.  Plaintiffs allege that unlined disposal "ponds" for liquid wastes were constructed on the GBF Landfill in the 1960s.  <u>Id.</u>, ¶ 80.  Between 1960 and 1973, "80 million gallons of liquid toxic waste" were deposited in these "ponds."  <u>Id.</u>  The disposed liquids allegedly include chlorinated solvents, waste acids, beryllium metal, PCBs, oils, benzenes, lead, mercury, and vinyl chloride.  <u>Id.</u>  Approximately 50% of these liquid toxins are alleged to have filtered into groundwater.  <u>Id.</u>  Hazardous substances in the groundwater underneath the GBF Landfill are said to exceed maximum contaminant levels—that is, drinking water standards—for arsenic, benzene, cadmium, carbon tetrachloride, chloroform, chromium, 1,1-dichloroethane, 1,1-dichloroethylene, 1,2-dichloroethylene, 1,2-dichloropropane, lead, mercury, perchloroethylene, selenium, silver, trichloroethylene, and vinyl chloride.  <u>Id.</u>, ¶ 86.  Plaintiffs allege that the groundwater contamination jeopardizes water-supply wells for nearby proposed residential development.  <u>Id.</u>, ¶ 87.

<u>Chevron Action</u>.  The contamination at issue in the Chevron Action is surface-level, municipal solid waste.  Plaintiffs allege that the City of Antioch accumulated waste, "which it deposited on its property and the Property then owned by Standard Oil of California."  FAC, ¶ 14.  Further, plaintiffs allege: "Documents indicate that Standard Oil of California was aware of this accumulation of waste product and its distribution on Standard Oil of California property."  <u>Id.</u>  The waste is composed of "mixed burn and unburned municipal waste," covered by up to three feet of soil.  <u>Id.</u>, ¶ 17.  The Chevron Action does **not** include any allegations of groundwater contamination, disposal "ponds" for liquid wastes, toxins infiltrating groundwater or violation of drinking water standards.

III.    **PROCEDURAL HISTORY.**

Groundwater contamination from the GBF Landfill spawned two, related environmental contamination lawsuits filed in 2004: <u>West Coast Home Builders, Inc. v.</u>

Aventis Cropscience USA, Case No. C 04-2225 SI, filed June 7, 2004 ("West Coast Action"),[1] and the TRC Action, filed June 30, 2004. In each of these cases, plaintiffs are residential developers (related, closely held corporations), suing because groundwater contamination prevents them from developing their property.

The TRC Action, the West Coast Action and the Chevron Action are each at different stages of development:

> TRC Action. On February 13, 2007—approximately two and one-half years after the case was filed—the Court set dates for discovery cutoff and trial. The discovery cutoff is May 1, 2008, and trial is set for November 17, 2008.
>
> West Coast Action. On March 11, 2008, the Court set June 26, 2009 as the discovery cutoff and October 5, 2009 as the trial date.
>
> Chevron Action. On November 15, 2007—more than three years after filing the TRC and West Coast Actions—plaintiffs filed the Chevron Action. On March 11, 2008, the Court set June 26, 2009 as the discovery cutoff and October 5, 2009 as the trial date. Plaintiffs filed their First Amended Complaint in this action on March 26, 2008, and Chevron has yet to respond. Discovery has not yet begun.

Although the TRC and West Coast Actions are related, and though both were commenced in June 2004, consolidation of those actions has not been sought. On March 19, 2008, the TRC Defendants filed their motion to consolidate the TRC and Chevron Actions. No party has sought to intervene in the others' action.[2]

---

[1]  The case filed by West Coast Home Builders in 2004 was not their first. In fact, West Coast had brought a similar (now closed) action in October 2001. West Coast Home Builders, Inc. v. Clean Bay Inc., et al., Case No. 01 C-4029 SI.

[2]  In their last case management conference statement, Antioch stated it would file either a motion to consolidate or a motion to intervene in the Chevron Action. Due to the differences between the TRC and Chevron Actions—in the nature of claims and the stage
(continued…)

IV. **LEGAL STANDARD FOR CONSOLIDATION.**

Federal Rule of Civil Procedure 42(a) gives district courts the discretion to order consolidation of cases as warranted "to avoid unnecessary costs or delay." The threshold question is whether the two proceedings involve common issues of fact or law. Zacky Farms v. FMC Corp., 2001 U.S. Dist. LEXIS 24255, *11. "When cases involve some common issues but *individual issues* predominate, consolidation should be denied." Hasman v. G.D. Searle & Co., 106 F.R.D. 459, 461 (E.D. Mich. 1985) (italics in original; citations omitted). See also Rendon v. City of Fresno, 2006 WL 1582307, *4 (E.D. Cal., June 2, 2006) (even when cases involve some common issues, consolidation may be inappropriate when "individual issues predominate"). The Court must "examine the special underlying facts with close attention before ordering a consolidation." Solvent Chem. Co. v. E.I. DuPont de Nemours & Co., 242 F. Supp. 2d at 221 (internal quotations omitted).

If common issues predominate, "the Court should then weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice consolidation might cause." Servants of the Paraclete, Inc. v. Great Am. Ins. Co., 866 F.Supp. 1560, 1572 (D.N.M. 1994) (citing Southwest Marine, Inc. v. Triple A Mach. Shop., Inc., 720 F. Supp. 805, 807 (N.D. Cal. 1989)). In addressing consolidation, the Court should consider:

1. Risk of delaying trial.
2. Risk of prejudice and confusion.
3. Burden on parties, witnesses and available judicial resources.

---

(…continued)
of proceedings—Chevron suggested that Antioch intervene rather than seek consolidation. Intervention is expressly authorized under CERCLA, 42 U.S.C. § 9613(i), as well as Rule 24(a)(2) of the Federal Rules of Civil Procedure, and Chevron would not oppose Antioch's intervention. To the extent TRC Defendants are seeking to "protect their interests" (Mtn. 8:8), their proper remedy is intervention, not consolidation. United States v. Acton Corporation, 131 F.R.D. 431, 436, n.7 (D.N.J. 1990) ("defendants conceded that if they were allowed to intervene, the motion for consolidation would be superfluous"); United States v. Yonkers Bd. of Educ., 518 F. Supp. 191, 203, n.14 (S.D.N.Y. 1981) (granting intervention eliminates the consolidation process). Consolidation is as unnecessary, as it is unwarranted.

1  Zacky Farms, 2001 U.S. Dist. LEXIS 24255, at *13-14.[3]  "Added time will be required in

2  trying multiple lawsuits consolidated for trial, with greater inconvenience and expense to all

3  concerned."  Id.  Furthermore, while considerations of judicial economy may favor

4  consolidation, those considerations "must yield to a paramount concern for a fair and

5  impartial trial."  Solvent, 242 F.Supp.2d at 221 (internal quotations omitted).

6       The party moving for consolidation bears the burden of proving that consolidation is

7  warranted.  Id.; Zacky Farms, 2001 U.S. Dist. LEXIS 24255, at *11.  As described below,

8  the parties moving for consolidation have failed to meet their burden.

9  V.   **THE TWO ACTIONS INVOLVE DIFFERENT DEFENDANTS, DIFFERENT**

10       **LANDFILLS, DIFFERENT CONTAMINATION AND DIFFERENT**

11       **THEORIES OF LIABILITY; INDIVIDUAL ISSUES PREDOMINATE AND,**

12       **THUS, CONSOLIDATION SHOULD BE DENIED.**

13  A.   **Because individual issues predominate, consolidation should be denied.**

14       In their Motion, TRC Defendants assert that—with "minor differences" relating to

15  claims for inverse condemnation—"Plaintiffs rely upon the same operative facts in both the

16  TRC and Chevron Actions."  Mot. 3:22-25.  While there are common background

17  allegations in the two actions, the "operative" facts are not the same at all.  The TRC Action

18  names over 50 defendants, each of whom is alleged to have owned or operated an adjacent

19  landfill, or to have generated waste for disposal in a nearby landfill.  Those are the

20  "operative" facts for liability in the TRC Action.  In contrast, Chevron is the sole defendant

21  in the Chevron Action; there are no claims against landfill owners or operators, nor claims

22  against waste generators, in the Chevron Action.  And the operative facts for liability in the

23  Chevron Action are unique:  Plaintiffs allege that Standard Oil allowed Antioch to deposit

---

[3]  TRC Defendants cite a Northern District of Texas case, Mayfield v. American Automobile Ins. Co., 2003 WL 21250935 (N.D. Tex. 2003) as dictating the eight factors to be considered in determining whether to consolidate.  Mot. 6:20-7:2.  TRC Defendants mischaracterize Mayfield.  In fact, the Mayfield court set out what it described as a "non-inclusive list of factors *militating in favor of consolidation*," not an eight-factor consolidation test or list of objective criteria.  Mayfield, 2003 WL 21250935, at *1 (italics added).

waste on its property (FAC, ¶ 14) and, when Standard sold the property, that Standard failed to disclose the prior use of the property as a dump site (FAC, ¶ 70).

Purportedly to show how the operative facts are "verbatim" (Mot. 3:23-4:1), the Motion includes a chart showing similar paragraphs from the Third Amended Complaint in the TRC Action and the Complaint[4] in the Chevron Action. In fact, this chart, by what it omits, illustrates the substantial differences between the two actions. The chart makes no reference to paragraphs 4 to 60 of the TAC—which identify the fifty-odd defendants who owned, operated or generated waste that was deposited at the adjacent landfills—because there are no corresponding paragraphs in the FAC filed in the Chevron Action. Likewise, the chart skips over paragraphs 65 to 91 of the TAC because these paragraphs—relating to the operation of and contamination at the CCSL Landfill (TAC, ¶¶ 65-77); operation of and contamination at the GBF Landfill (TAC, ¶¶ 78-81); operation of and contamination at the Pittsburg Landfill (TAC, ¶¶ 82-84); and groundwater monitoring and DTSC Order at GBF Landfill (TAC, ¶¶ 85-91)—are not part of the Chevron Action.

In sum, individual issues predominate over common issues and, therefore, consolidation is inappropriate. Hasman, 106 F.R.D. at 461 (denying consolidation because no "one set of operative facts" and no "single proximate cause" applies to each case); Close v. American Honda Motor, Inc., 1994 WL 761957, *3 (D.N.H., Dec. 5, 1994) (denying consolidation because individual issues in the actions predominate over common issues).

B.  **CERCLA case law is directly on point and supports denial of consolidation.**

TRC Defendants fail to cite any CERCLA case in which consolidation was considered.[5] In fact, there are two such cases which are very much like the present

---

[4] TRC Defendants filed their Motion before the First Amended Complaint in the Chevron Action was filed on March 26, 2008.

[5] Indeed, none of the cases cited in the Motion involve environmental contamination. The closest the Motion comes to addressing environmental contamination is the brief discussion of joint tortfeasors. TRC Defendants cite Mays v. Liberty Mutual Ins. Co., 35 F.R.D. 234 (E.D. Pa. 1964) for the proposition that "Actions by a Plaintiff against

(continued…)

1  matter—<u>Solvent Chemical Co. v. E.I. DuPont de Nemours & Co.</u> and <u>Zacky Farms v. FMC</u>

2  <u>Corporation</u>—and in each instance, consolidation was denied.  The same result should

3  obtain here.

4      In <u>Solvent Chemical</u>, a potentially responsible party ("PRP") brought a CERCLA

5  action against a second PRP, seeking contribution to the costs of cleanup.  Plaintiff Solvent

6  moved to consolidate the CERCLA action with an earlier CERCLA action against another

7  PRP.  As here, plaintiff asserted that (1) both actions involve claims for contribution

8  relating to the same property, the Solvent facility; (2) the same substantive law—CERCLA

9  and common law contribution—governs the claims in both actions; and (3) Solvent's

10  allegations against DuPont are similar and directly related to its claims against the other

11  PRPs in its earlier-filed CERCLA action.  <u>Solvent</u>, 242 F. Supp. 2d at 221.  To support its

12  assertion that common questions of fact and law were involved in both actions, plaintiff

13  argued that "virtually identical hydrogeological testimony" would be needed to show

14  migration of groundwater contamination in both actions, and that the court would be

15  required to allocate remediation liability among plaintiff and all PRPs at trial.  <u>Id.</u>

16      Opposing consolidation, DuPont argued—and the court agreed—that differences

17  between the two actions warranted denial of consolidation.  <u>Id.</u> at 222.  First, DuPont

18  distinguished Solvent's claims against the supplier (generator) defendants, from Solvent's

19  claims against DuPont:  the claims against the generator defendants required "showing that

20  these defendants arranged for disposal of their wastes at the Solvent plant," whereas the

21  claim against DuPont was for the "alleged release of hazardous substances at the DuPont

22  plant and their migration to the Solvent facility."  <u>Id.</u>  Second, DuPont distinguished the

23  ―――――――――――――

(…continued)
24  different tortfeasors that are alleged to have caused or contributed to the same harm are also
apt cases for consolidation." Mot. 6:9-13.  Contrary to TRC Defendants' characterization,
25  however, the <u>Mays</u> court did **not** consolidate actions involving joint tortfeasors.  Quite the
opposite:  Even though there was just a single plaintiff who had filed four separate suits
26  arising from the same personal injury, the court nevertheless declined complete
consolidation because it "would produce an unreasonably complicated trial that would
27  prejudice the rights of the various defendants and third party defendants."  <u>Mays</u>, 35 F.R.D.
at 235.
28

1  migration-of-contamination claim against another PRP, Olin, because the possible routes of

2  migration were separate and the type of chemicals different.  Id.  In light of these

3  differences, the court denied consolidation.  Id. at 223.

4        The basis for consolidation here—that the two actions involve contamination on the

5  same property and many of the same substantive law claims—is just like in Solvent

6  Chemical.  And, as in Solvent Chemical, the theory of liability, as well as the nature and

7  pathway of contamination, are different.  As in Solvent Chemical, so here, consolidation

8  should be denied.

9        The Eastern District of California's decision in Zacky Farms is likewise on point.

10  There, the court declined to consolidate an environmental contribution action (the "FMC

11  Action") with an environmental cost recovery action (the "Zacky Action").  2001 U.S. Dist.

12  LEXIS 24255, at *3-4.  In Zacky Farms, like Solvent Chemical, the court found that—

13  despite certain "commonalities"—there was "no overriding showing that consolidation

14  would enhance court efficiency."  Id. at *15.  The court explained:

> Although commonalities exist between the FMC and Zacky actions, the actions address different contaminants at different sites.  The FMC action focuses on TCE and chromium whereas the Zacky action addresses nitrates, TCP and unidentified substances.  The sites in the FMC and Zacky actions also involve different uses and owners. Meshing two highly complex environmental actions creates the danger of increasing confusion of factual and legal issues for the trier of fact.  A consolidated trial would force the parties to endure voluminous evidence of other parties' claims and which is not pertinent to them.
>
> . . . . On balance, consolidation's potential for delay, confusion, and prejudice outweighs perceived court efficiency despite common factors between the FMC and Zacky actions.

23  Id. at *15-16. As in Zacky Farms, so here, the TRC and Chevron Actions involve different

24  types of contamination (groundwater versus surface), different substances (liquid toxics and

25  hazardous chemicals, versus municipal garbage), and different landfill sites (CCSF

26  Landfill, GBF Landfill and Pittsburg Landfill, versus only the Old Antioch Landfill).

27        Moreover, like in Zacky Farms, a consolidated trial would force Chevron to endure

28  "voluminous evidence" of other parties' claims—notably, the history and operation of the

CCSF, GBF and Pittsburg Landfills; the generation and disposal of waste, at these landfills, by the TRC Defendants; the groundwater contamination emanating from the GBF Landfill—which is not pertinent to Chevron. As discussed more fully below, the potential for delay, confusion and prejudice far outweighs any arguable gain in efficiency.

## VI. CONSOLIDATION SHOULD BE DENIED BECAUSE THE INTEREST IN JUDICIAL CONVENIENCE IS FAR OUTWEIGHED BY THE POTENTIAL FOR DELAY, CONFUSION AND PREJUDICE.

In determining whether to consolidate, "a court weights the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." Southwest Marine v. Triple A Mach. Shop, 720 F. Supp. 805, 807 (N.D. Cal. 1989) (denying motion to consolidate cases involving improper disposal of hazardous waste, because consolidation of actions "would likely delay the trial"). Except in the most conclusory fashion—see eight "factors" supporting consolidation, Mtn. 7:3-19—TRC Defendants fail to address the potential for delay, confusion and prejudice that would result from consolidation. In fact, delay would be inevitable; confusion probable; and burden substantial. For these reasons too, consolidation should be denied.

### A. Delay would be inevitable.

"Federal courts have declined to consolidate cases involving common questions of law or fact where the cases were at different stages of preparedness for trial and where consolidation would delay the case ready of disposition." Servants of Paraclete, 866 F. Supp. at 1572; see, e.g., Mills v. Beech Aircraft Corp., 886 F.2d 758, 762 (5th Cir. 1989) (affirming district court's denial of consolidation of cases with two-year gap between filing); Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1334 (10th Cir. 1988). As one court noted:

> If the court were to order consolidation now, the cases which were ready for or close to trial would have to be held up pending completion of pretrial in the other cases. Such a result would delay rather an expedite the disposition of those cases which are not prepared for trial. In such a situation courts have consistently denied consolidation.

Transeastern Shipping Corp. v. India Supply Mission, 53 F.R.D. 204, 206 (S.D.N.Y. 1971).

Here—as all parties to the TRC Action surely realize—an order of consolidation would inevitably delay discovery and trial in that action. The TRC Action was filed in June 2004; discovery and motion cutoffs, as well as the trial date, were set in February 2007; the discovery cutoff is May 1, 2008; and trial is November 17, 2008. The Chevron Action was filed just six months ago, and Chevron has yet to respond. If the two actions are consolidated, then the trial date, discovery cutoff and all other deadlines in the TRC Action will have to be re-set, leading to further delay (as the TRC Action approaches its fifth year).[6]

### B. Confusion and prejudice to Chevron would be likely.

Consolidation would pose a serious risk of jury confusion and prejudice to Chevron. The Chevron Action involves surface contamination with municipal waste—not, as plaintiffs claim in the TRC Action, groundwater contamination with toxic chemicals. This is not, as TRC Defendants suggest, a mere "distinction without a difference" or "attempt to assert form over substance." Mtn. 2:20-26. If Chevron is lumped into the groundwater case with the several dozen TRC Defendants, there is a real risk the jury will falsely associate groundwater contamination with Chevron.[7] Rendon, 2006 WL 1582307, at *8 ("potential for spillover prejudices exists" from consolidation). Moreover, cautionary jury

---

[6] Repeatedly in their Motion, TRC Defendants state that Plaintiffs should have "included Chevron as a defendant in the first place," or simply amended its complaint in the TRC Action to add Chevron. Mtn. 1:26-28, 2:26-28, 5:1-8, 8:6-15. TRC Defendants also suggest the only reason Chevron was not sued originally was because of a tolling agreement. Mtn. 1:26-28. This is all beside the point. Whatever the reason, the Chevron Action was not begun until more than three years after the TRC Action.

[7] This risk of prejudice would be greater still if, as TRC Defendants request, the Chevron and TRC Actions were "consolidated into one, such that they become a single action in which a single judgment is rendered." Mtn. 5:9-11. That is not the law, however. "[I]t is well settled that consolidating actions does not 'merge' all of the cases into a single case between all of the parties." Dusky v. Bellasaire Investments, 2007 WL 4403985, *4 (C.D. Cal., Dec. 4, 2007) (citing Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933) ("consolidation . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.")) See also Geddes v. United Financial Group, 559 F.2d 557, 561 (9th Cir.1977) (consolidation for purposes of discovery does not merge suits into single cause of action). To require a "master complaint" (Mtn. 7:20-8:4) for the two actions would not be appropriate.

1 instructions are unlikely to fully mitigate the risk of prejudice and confusion. Id. In these

2 circumstances, consolidation is not appropriate. Walker v. H. Councill Trenholm State

3 Technical College, 2007 WL 1140423, *4 (M.D. Ala., Apr. 17, 2007) (finding likelihood of

4 confusion and prejudice in minds of jurors "outweighs the benefits of any possible

5 convenience or economy to be obtained from consolidation in discovery and at trial").

6 Schat v. Javits, 53 F.R.D. 321, 324 (S.D.N.Y. 1971) (although common questions of law

7 existed, consolidation denied because parties would be prejudiced by confusion).

8    C.      **The burden on Chevron would be substantial.**

9          In addressing consolidation, the Court should consider the burden on parties,

10 witnesses and judicial resources. Zacky Farms v. FMC Corporation, 2001 U.S. Dist.

11 LEXIS 24255, at *14. Here, the burden on Chevron would be quite substantial. As the

12 court noted in Zacky Farms, a consolidated trial would force the parties to endure

13 voluminous evidence of the others' claims. Id. at *15. The burden on Chevron alone—

14 from having to participate in discovery and trial on complex, expert-driven groundwater

15 issues, all unrelated to the claims against Chevron—would far outweigh any efficiency of

16 consolidation.

17    VII.     **CONCLUSION.**

18          For all the foregoing reasons, the TRC Defendants' motion for consolidation should

19 be denied.

20          Dated: April 4, 2008.

21

22                                  PILLSBURY WINTHROP SHAW PITTMAN LLP
                                  BLAINE I. GREEN
                                  JEFFREY S. JACOBI
23                                  50 Fremont Street
                                 Post Office Box 7880
24                                  San Francisco, CA 94120-7880

25
                                 By      */s/ Blaine I. Green*
26                                        Blaine I. Green
                                 Attorneys for Defendant CHEVRON U.S.A., INC.
27

28